1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  IVANA DJAK (NYBN 5516687)
   Assistant United States Attorney
5
        1301 Clay Street, Suite 340S
6       Oakland, California 94612
        Telephone: (510) 637-3918
7       FAX: (510) 637-3724
        ivana.djak@usdoj.gov
8

9  Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,        )  CASE NO. 23-CR-259 YGR
                                     )
15          Plaintiff,               )  MEMORANDUM IN SUPPORT OF UNITED
                                     )  STATES' MOTION FOR DETENTION
16       v.                          )
                                     )
17  JEROME WINGERT,                  )  Date:      March 8, 2024
                                     )  Time:      10:30 AM
18          Defendant.               )  Court:     Hon. Donna M. Ryu
    _____)

19

20                         INTRODUCTION

21        Jerome Wingert has a long and violent criminal history.  In the present case, he is charged with

22  possessing with intent to distribute approximately a pound of methamphetamine, which he left out in the

23  shared spaces of his residence within reach of two small children.  When the present offense conduct

24  occurred in April 2023, the defendant was on parole for an August 2014 conviction for, among other

25  offenses, assault with a deadly weapon.  The defendant was sentenced to 14 years in prison, in part, for

26  beating a victim in the head with a cordless power drill while robbing the victim's vehicle.  When the

27  August 2014 assault occurred, the defendant was on parole for a May 2011 home robbery during which

28  he repeatedly struck the victim in the head.  Most recently, in August 2023, while on parole for the

August 2014 assault, and while this instant case was being investigated, the defendant physically attacked his girlfriend as she attempted to escape the vehicle the defendant was driving—she suffered large gashes to her head and bruising all over her extremities. A bystander found the victim bleeding in the street.

These most recent and violent incidents barely scratch the surface of the defendant's criminal history. The defendant has been convicted over a dozen times in the past two decades for, among other offenses, evading law enforcement, falsifying checks, controlled substance offenses, receiving stolen property, and being a felon in possession of a firearm. The defendant has also been arrested dozens of times, for among other offenses, evading law enforcement, vehicle thefts, engaging in hit and runs, property damage, mail theft, access device theft, and controlled substance offenses. Most of his arrests occurred while he was on parole or pre-trial release—and he has repeatedly failed to appear in court.

The defendant is a known danger to the community and a known flight risk. He has repeatedly violently attacked innocent members of the community, repeatedly fled from law enforcement, and repeatedly violated court orders. The defendant cannot overcome the presumption that there is no condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. Accordingly, the government requests that the defendant be detained pending trial.

I.    FACTUAL BACKGROUND

The government proffers facts herein in support of the argument that the defendant is a danger to the community and a flight risk through counsel.[1]

---

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* FED. R. EVID. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B). Because the Act ratified existing practice, the government is likewise authorized to present information by proffer.

A.    The April 28, 2023 Parole Search of the Defendant's Residence

On April 28, 2023, Concord Police Department ("CPD") officers conducted a parole compliance check of the defendant at his residence on Gilardy Drive, Concord, California.  The defendant was on California Department of Corrections parole that included a search provision that he, his residence, and any property under his control were subject to search at any time, with or without a warrant or cause. The defendant provided the address on Gilardy Drive as his residence with his parole officer, as well as with the California Department of Motor Vehicles.  In the days leading up to April 28, CPD officers had conducted surveillance of the Gilardy Drive residence and observed the defendant entering and exiting the residence and accessing a gold 2014 Subaru Forester SUV that was parked in front of the residence.

On April 28, at approximately 11:45 a.m., officers initiated a parole search.  The officers wore body worn cameras ("BWC") during the operation.  The officers knocked on the door and C.W., the defendant's wife, answered the door.  At that time, other officers observed the defendant run through the backyard of the Gilardy Drive residence and jump the fence and flee.  The defendant soon came back into the backyard of the Gilardy Drive residence and was detained there.  The defendant's brief attempt to flee was also seen by an officer operating a drone with a camera above the residence at the time of the parole search.  On the defendant's person, officers found a pipe with residue of what was suspected to be methamphetamine and two bullets that were later determined to be fake bullets used in a BB gun.

After the defendant was detained, the officers removed C.M., another woman, and two children from the residence and directed them to stay in front of the house.  The officers performed a protective sweep of the house and saw in plain view mail belonging to the defendant and in plastic bags in a box in the garage, plastic bindles of a white crystalline substance suspected to be methamphetamine.

The officers performed a full search of the residence and found approximately 134 grams of methamphetamine inside the plastic bags in a box in the garage.  Also, in the garage, the officers found two digital scales and many plastic baggies that are consistent with packaging for individual quantities

of narcotics for street-level sales.  In the living room that also contained sleeping areas for children and children's toys, inside a duffel bag, officers found 634.3 grams of methamphetamine.  The duffel bag also contained a pair of men's basketball shoes and a BB gun that was loaded with fake bullets that were consistent with the two fake bullets found on the defendant's person.  The duffel bag was found on the floor in the living room within easy reach of the children who were on the premises.  Smaller amounts of methamphetamine were found in other locations in the residence.  The methamphetamine was sent to the DEA Western Laboratory, which determined that there was a total of 771.3 grams (751.5 pure) of methamphetamine recovered during the search.  The officers also searched the Subaru Forester and found several items consistent with narcotics sales, including numerous plastic ziplock baggies and a digital scale capable of measuring large amounts of narcotics.

While the defendant was detained in handcuffs in the back of a patrol vehicle, a CPD officer told the defendant that he was detained for officer safety during the parole search and was not under criminal arrest.  At one point the officer told the defendant that officers had found narcotics in the house, specifically in a duffel bag in the living room.  The defendant told the officer the duffel bag belonged to him.  Later, the same CPD officer placed the defendant under arrest and read him the *Miranda* warnings. The defendant again said the duffel bag belonged to him.

The two women who had been in the house, C.M. and A.K., who identified herself as the defendant's sister, waited outside for the search to be completed.  C.M. stated that she lives at the Gilardy Drive residence with her husband.  She stated that the defendant borrowed the Subaru Forester from a friend and that he was the primary operator of that vehicle.  C.M. gave consent for officers to search her entire residence.  One of the children living at the residence was the defendant's young son.

A.K. stated that she had been living at the Gilardy Drive residence with her young daughter for several weeks.  She and her daughter had been sleeping in the living room, and she stored their

belongings in the dining room area. She consented to a search of all her belongings. Both C.M. and A.K. stated that the methamphetamine that was found did not belong to them.

B.    The Defendant's Violent Criminal History

The defendant has a long and violent criminal history. During the April 28, 2023 parole search, the defendant was on parole for an August 2014 conviction in Contra Costa County for, among other offenses, assault with a deadly weapon. He was also convicted for identity theft from ten or more persons. The defendant was sentenced to 14 years in prison, in part, for beating a victim in the head with a cordless power drill while robbing that victim's vehicle. The defendant hit the victim in the back of the head with the power drill repeatedly, and punched the victim in the face, until the victim fell face-first into the sidewalk, at which point the defendant straddled the victim and kept shoving the victim's face into the sidewalk. The August 2014 conviction came on the heels of a string of vehicle theft and robbery arrests of the defendant across Contra Costa and Marin Counties.

The defendant was released from prison in April 2022 and was on parole for the August 2014 conviction, when CPD Officers discovered over a pound of methamphetamine in his residence during the April 28, 2023 parole search. Unfortunately, while the investigation for the instant case was ongoing, the defendant committed yet another violent crime. On August 23, 2023, CPD Officers responded to a 911 call about a woman who appeared to have been thrown from a moving vehicle on San Miguel Road in Concord, California. The caller was in her home when she heard a vehicle screech and stop, and then heard a loud thud. The caller walked out into her front yard and found a bloodied woman lying on the ground. Officers found the victim bleeding from her head. The victim identified herself as the defendant's girlfriend. The victim was transported to the hospital to receive medical treatment for her injuries, which included large gashes to the side of her head and bruising all over her extremities. While in hospital, the victim gave a statement to law enforcement: the victim and the defendant were driving in his vehicle when the defendant became enraged. At one point the defendant

told the victim to get out of his car, but when she tried, he pulled her back in by her hair so that her head landed in his lap and her feet and legs were still hanging out of the open front passenger car door. The defendant kept driving at about 15 to 20 mph while also punching the victim in the face, biting her head and face, and pulling her hair, all while her feet were hanging out of the side of the moving vehicle. The victim feared for her life and decided to escape, so she bit the defendant's hand and jumped out of the vehicle. The defendant then sped off. The defendant was charged with domestic violence and kidnapping—he plead guilty to the domestic violence count on December 15, 2023, and served his sentence through February 29, 2024, at which point he was released to federal custody.

At the time of the August 2014 assault, the defendant was on parole for a May 2011 violent home robbery he committed in Berkeley. The victim in that case reported that the defendant and a woman drove the victim's girlfriend back to her apartment after a night out. The victim had never met the defendant or the woman, but once they were inside the victim's home, the defendant struck the victim in the head repeatedly with what appeared to be a silver semi-automatic handgun. The defendant stole various electronics and the victim's wallet before running off.

The defendant was convicted at least 11 times between 2000 and 2004 alone, including for, among other offenses, receiving stolen property, evading law enforcement, falsifying checks, controlled substance offenses, and being a felon in possession of a firearm. And the defendant was arrested dozens of times, for among other offenses, evading law enforcement, vehicle thefts, engaging in hit and runs, property damage, mail theft, access device theft, and controlled substance offenses, between his various convictions over the past twenty years. Most of his arrests occurred while he was on parole or pre-trial release—and he has repeatedly failed to appear in court. The defendant was also cited for being in possession of a weapon while incarcerated for the August 2014 conviction.

The defendant is undeterred and not amenable to supervision. The defendant has endangered the community for the past twenty years, and his offenses have only increased in violence and intensity, as the August 2023 domestic violence incident demonstrates.

## II. LEGAL STANDARDS

This Court can detain a defendant pretrial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk. *Id.* at § 3412 (b), (c). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). A finding that a defendant presents a risk of non-appearance must be supported by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

The Court considers four factors to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Finally, the law presumes that no condition or combination of conditions will reasonably assure the appearance of the defendant, and the safety of the community, when the defendant is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). In such cases, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.*

III.    ARGUMENT

      A.    <u>The Defendant Faces a Rebuttable Presumption in Favor of Detention.</u>

The defendant is charged with one instance of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). This offense carries a maximum term of imprisonment of twenty years or more under the Controlled Substances Act, and in fact a five-year mandatory minimum term. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, the defendant will be unable to overcome this presumption.

      B.    <u>The Defendant Cannot Overcome the Presumption that He Is a Flight Risk.</u>

The defendant has never been deterred from engaging in violent criminal conduct by court orders. He has repeatedly violated his parole and bail conditions. The defendant was on parole for the May 2011 home robbery (in which he beat the victim in the head with a handgun), when he committed the August 2014 assault with a deadly weapon (in which he beat the victim in the head with a power drill). And the defendant was on parole for the August 2014 assault with a deadly weapon when he committed the August 2023 domestic violence assault (in which he beat his girlfriend while she hung out of the side of a moving vehicle). The defendant has also repeatedly failed to appear in court while on parole or on pre-trial release. He is a known flight risk—he has repeatedly fled. The defendant has two criminal convictions for evading law enforcement officers in 2000 and 2003. He has been arrested for evading law enforcement officers half a dozen times. He fled when law enforcement appeared at his residence for the April 2023 parole search at issue in this case. The defendant will not comply with the conditions this Court imposes, and he is unlikely to appear for future hearings set in this case.

Additionally, the charges brought against the defendant are among the most serious he has faced to date. He faces a mandatory minimum sentence if convicted. The evidence against the defendant is strong. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cr. 1991) (holding that strong evidence of guilt "makes it more likely that he will flee"). All of these factors, when taken together, demonstrate that the defendant poses a significant flight risk and has strong incentives to flee.

C.    Defendant Cannot Overcome the Presumption that He is a Danger to the Community

Not only is the defendant unlikely to follow this Court's orders and to appear for future hearings in this case, he is likely to continue to pose a danger to the community if he is released.  In April 2023, he left over a pound of methamphetamine lying around within reach of two small children—he is willing to put his own children in harm's way.  In August 2023, he viciously physically assaulted his girlfriend, causing gashes to her head and bruises across her extremities.  Both instances occurred while the defendant was on parole for an August 2014 assault with a deadly weapon, which involved the defendant beating a victim in the head with a power drill.  The defendant committed the power drill attack while he was on parole for a May 2011 home robbery in which he beat a victim in the head with a handgun.

Pretrial Services has also concluded that the defendant poses both a flight risk and a danger to the community and should be detained pending trial.  The defendant's proposed plan to return to living with his wife C.M. and their two children—the same configuration in which he left large quantities of methamphetamine in reach of those children—is especially dangerous and inappropriate.

The defendant cannot be deterred, and if he is released, more innocent people could get seriously hurt.

IV.    CONCLUSION

The Court should order the defendant detained pending trial because he cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community.


DATED:  March 7, 2024                                    Respectfully submitted,

                                                         ISMAIL J. RAMSEY
                                                         United States Attorney

                                                         _____/s/_____
                                                         IVANA DJAK
                                                         Assistant United States Attorney